UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

ERVIN STUBBS,

        Plaintiff,                       Case No. 2:22-cv-206

v.                                           Honorable Maarten Vermaat

SARA SCHROEDER et al.,

        Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.17.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litigation Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendant(s) is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding

tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) (stating that "[p]ursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way that they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I. Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Warden Sara Schroeder, Assistant Deputy Warden Kevin Pelky, Resident Unit Manager P. Erickson, Former Wardens Erica Huss and Robert Napel, MDOC Deputy Director Larry Brown, Correctional Facilities Administration (CFA) Director B. Travelbee, Former Prisoner Counselor C. Lacount, Resident Unit Manager K. Niemisto, Inspector J. Contreras, Assistant Resident Unit Specialist K. Giesen, Prisoner Counselor

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

R. Horrocks, Resident Unit Manager D. Viitalla, Former Resident Unit Manager M. Latinen, Sergeant Unknown Phillips, Officer Unknown Schroederus, Hearings Investigator E. Hemmila, Grievance Coordinator Q. Bolton, Inspector Unknown Bush, and Manager Grievance Specialist Richard D. Russell.

In his complaint, Plaintiff appears to be complaining about the fact that his requests to be removed from security threat group (STG) status have been denied since his designation as an STG member on December 26, 2013. Plaintiff claims that Defendants violated his due process and equal protection rights under the Fourteenth Amendment, as well as his associational rights under the First Amendment.

Plaintiff attaches copies of his grievances and response as they relate to his STG status. Plaintiff's step I grievance response to MBP-14-02-00390-08G, dated March 6, 2014, notes that Plaintiff was claiming to have been labeled STG based on false accusations and that he denied ever refusing to sign a renunciation form. (ECF No. 1-1, PageID.2.) The investigation information on the form indicates that Plaintiff had been observed associating with known STG affiliates, found in possession of STG related documents, and had received assaultive STG related misconducts since April of 2011. (*Id.*) Plaintiff was placed on STG I status and his grievance was denied. However, Plaintiff was given the opportunity to sign a renunciation form, which was forwarded to the Inspector's office. (*Id.*) Plaintiff's step II and III appeals were denied on April 25, 2014, and August 28, 2014, respectively. (*Id.*, PageID.22-23.)

Plaintiff subsequently filed step I grievance MBP-15-04-0066-08G, contending that he should have been removed from STG status, which was denied on April 29, 2015. (ECF No. 1-2, PageID.32.) In the investigation information section, Defendant Giesen noted that Plaintiff had been designated STG I on February 21, 2014, "for possession of documents, observed observation

4

and prisoner information" and had signed a renunciation/removal form on March 6, 2014, but the MBP's Inspector office did not concur with the removal. (*Id.*) Plaintiff's STG status was reviewed on January 5, 2015, and was scheduled to be reviewed again in January 2016. (*Id.*) Finally, Defendant Giesen noted that at the time of the step I response, Plaintiff was classified to administrative segregation for assault on another prisoner who then required medical attention. (*Id.*) Plaintiff's appeal was denied at steps II and III. (*Id.*, at PageID.30 and PageID.33.)

Plaintiff's step I grievance MBP-17-10-0154-808G regarding his STG status was denied on October 13, 2017. In the investigation information section, Defendant Horrocks noted:

> Sgt. Phillips was interviewed about this grievance. He stated that prisoner Stubbs has not been in complete compliance with policy 04.04.113 for reduction from STG Status. Sgt. Phillips stated upon reviewing the grievance that right in the grievance the use of five pointed starts instead of dots on the letter "i" is a symbol associated with the STG group the Vice Lords which prisoner Stubbs is designated as a member. Prisoner Stubbs has made phone calls for other prisoners associated with the Security Threat Groups. Prisoner Stubbs was reviewed according to policy 04.04.113 on 1/16/17 and was told that he did not meet all the criteria at that time to be reduced off of STG. Prisoner Stubbs was instructed by the STG Team to stay misconduct free and refrain from any STG related activity and if this happened and time allowed he would possibly be given an expanded review after at least 6 more months. An expanded review was started on prisoner Stubbs in August of 2017. During this review prisoner Stubbs was found to have continued STG associations as previously stated. Prisoner Stubbs has also since 9/8/17 been found guilty of four class two misconducts which disqualify him from being eligible for reduction off of STG I. Grievance Denied.

(ECF No. 1-3, PageID.36.)

Plaintiff filed a step I grievance on March 11, 2020, complaining about his continuation on STG status for the prior four years. (ECF No. 1-4, PageID.38.) Plaintiff claimed that he had been attacked because he denounced his affiliation with the Vice Lords. (*Id.*, PageID.39.) Plaintiff's name was sent to EMS about his request to be removed from STG status on February 12, 2020, but upon investigation into his phone records and deposit history by the EMS division, there were discrepancies found that prevented Plaintiff from being removed from STG status. Plaintiff was

told that he could try again in a few months and the requirements of being eligible for removal from STG were explained to him. (*Id.*)

On April 26, 2022, Plaintiff filed a step I grievance regarding an incident that occurred on April 12, 2022. (ECF No. 1-5, PageID.41.) Plaintiff's grievance was rejected because he did not file the grievance within the time limits provided by Policy Directive 03.02.130, which allows 5 business days after attempting to resolve a grievable issue with staff, and attempted resolution within 2 days after becoming aware of a grievable issue. (*Id.*, PageID.42.) Plaintiff appealed the rejection to step III, but his appeals were denied. (*Id.*, PageID.43–45.)

On September 7, 2022, Plaintiff filed a grievance regarding the lack of a step II appeal response for his prior grievance. Plaintiff asserts that Defendant Bolton falsely claimed that he did not receive a step II appeal. (*Id.*, PageID.46.) Defendant Hemmila responded to Plaintiff's step I grievance on September 9, 2022, by noting that a step II appeal was sent to Plaintiff on May 6, 2022, but it was never returned to the grievance office. (*Id.*, PageID.47.) Defendant Bolton filled a second request from Plaintiff for a step II/III appeal form on September 7, 2022. (*Id.*) Defendant Hemmila further stated:

> Grievance records have been provided to back up the grievance officer's factual statements. In addition, the original grievance was rejected as untimely, and the step II appeal would have been upheld and answered as untimely. There is no valid justification for prisoner Stubbs to wait until 9/7/22 and then request a step II/III appeal form for a step I grievance that was submitted on 4/27/22 and returned to the grievant on 4/29/22 answered. No wrongdoing has been found by the grievance office as prisoner Stubb's [sic] was sent two different appeal forms on two occasions 5/6/22 and again on 9/7/22 as requested. In addition, PD 03.02.130 paragraph DD states in part a grievant has 10 business days to submit a step II appeal after receiving the step I response. Notice is always sent to the prisoner when a grievance and appeal is received by the grievance office, and none was ever sent.

(*Id.*)

Plaintiff complains that the failure to remove him from STG status violated his rights under the Constitution. Plaintiff seeks compensatory and punitive damages, as well as injunctive relief.

6

## II.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

7

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Due Process

Initially, the Court notes that Plaintiff complains that he has been kept on STG status in violation of his due process rights. An STG is defined under MDOC Policy as "a group of prisoners designated by the Director as possessing common characteristics which distinguish them from other prisoners or groups of prisoners and which, as a discrete entity, poses a threat to staff or other prisoners or to the custody and security of the facility." MDOC Policy Directive 04.04.113 ¶ B (eff. Dec. 20, 2021). The policy provides for a manager of the emergency management section (EMS). *Id.* ¶ H. In addition, the warden of each facility appoints a local STG coordinator for the institution. *Id.* ¶ I. A prisoner may be designated an STG I by the local STG Coordinator if there is sufficient documentation of the prisoner's membership in the STG and the prisoner fails to make a credible renunciation of his membership. *Id.* ¶¶ S–V. The EMS manager makes the final determination on designating a prisoner as an STG member. *Id.* ¶ T. A prisoner may be designated an "STG II" member if: (1) he is an STG I member and is found guilty of major misconduct related to his STG activity, (2) was previously an STG I member, and currently presents a threat to prisoners or staff, or (3) is identified as a leader enforcer or recruiter in an STG. *Id.* ¶ W.

A prisoner designated as an STG I member must be housed in security level II or higher. STG I prisoners are subject to the following restrictions: prisoners are generally limited to three visits per month; classification to a school or work assignment only as approved by the EMS manager; no attendance at group meetings of prisoners, except for approved religious services; no participation in group leisure time activities, except for yard; and cell search at least once a week. *Id.* ¶ BB. A prisoner designated as an STG II member shall be housed in security level V or higher. *Id.* ¶ CC. STG II members are also subject to the following restrictions: prisoners are generally

limited to two non-contact visits per month; classification to a school or work assignment only as approved by the EMS manager; no attendance at group meetings of prisoners, except for approved religious services; no participation in group leisure time activities, except for yard; cell search at least twice a week; and out-of-cell movement not to exceed one hour per day, excluding showers, meals, work, etc. *Id.* Prisoners incarcerated at Level V are also subject to greater personal property restrictions than prisoners incarcerated at lower security levels. *See* Mich. Dep't of Corr., Policy Directive 04.07.112.

In order to prevail on a procedural-due-process claim, an inmate must first demonstrate that he was deprived of "life, liberty, or property" by government action. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). Prisoners retain a liberty interest with respect to state-imposed prison discipline that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Plaintiff does not a state a violation of his due process rights. Plaintiff does not have a protected liberty interest in the procedures affecting his classification and security because the resulting restraint does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486. Moreover, the Supreme Court has repeatedly held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim*, 461 U.S. at 245; *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 244 (1976). Relying on *Sandin,* the Sixth Circuit has held that a Michigan prisoner can no longer claim a liberty interest in his security classification. *See Harbin-Bey v. Rutter,* 420 F.3d 571, 577 (6th Cir. 2005); *Rimmer-Bey v. Brown,*

62 F.3d 789, 790-91 (6th Cir. 1995); *accord Mackey v. Dyke,* 111 F.3d 460 (6th Cir. 1997). Plaintiff's designation as a STG member is nothing more than a security classification used by the prison. *Harbin Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005). Because Plaintiff does not have a constitutional right to a particular security level or classification, he fails to state a due process claim.

### B. Equal Protection

Plaintiff makes a conclusory assertion that his continued status as an STG member violated his equal protection rights. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Plaintiff does not allege that a fundamental right is implicated in this case or that he is a member of a suspect class; his claims therefore are not subjected to strict scrutiny.

Here, the "rational-basis" test applies. Inmates are not a suspect class. *Harbin-Bey*, 420 at 576 (*citing Hampton v. Hobbs,* 106 F.3d 1281, 1286 (6th Cir.1997)). Nor does Plaintiff's claim involve the denial of a fundamental right because a prisoner does not have a constitutional right to be placed in a specific security classification. *Id.* (*citing Moody v. Daggett,* 429 U.S. 78, 88 n. 9 (1976)). A review of the attachments to Plaintiff's complaint makes it apparent that he was designated as an STG member because of his gang affiliation, not because of his religion or any other fundamental right. *Id.*

In *Harbin-Bey*, the Sixth Circuit determined that the MDOC's policy directive regarding the classification of inmates as STG members is rationally related to the legitimate state interest

10

of maintaining order in the prison. *Id.* (*citing Jones v. N.C. Prisoners' Labor Union*, 433 U.S. 119, 136 (1977)).

> The MDOC policy directive in question includes the following factors to consider in designating a group as an STG: (1) history and purpose of the group, (2) organizational structure of the group, (3) propensity for violence or specific violent acts or intended acts that can be reasonably attributed to the group, (4) illegal or prohibited acts that can be attributed to the group, (5) demographics of the group, (6) existence of any written materials related to the group, (7) specific illegal acts that can be associated with the group, and (8) any other relevant information. None of these factors are discriminatory.
>
> The so-called "homosexual predators" and "escape risks" may, as Harbin–Bey asserts, receive a hearing before being so designated. But this does not mean that prisoners who are classified as STG members are necessarily entitled to the same procedural protections, because the STG policy directive is not aimed at a suspect class, nor does it invade a fundamental right. *See City of Cleburne,* 473 U.S. at 440, 105 S. Ct. 3249. "[W]here individuals in the group affected by a law have distinguishing characteristics relevant to interests the State has the authority to implement, the courts have been very reluctant . . . to closely scrutinize legislative choices as to whether, how, and to what extent those interests should be pursued." *Id.* at 441–42, 105 S. Ct. 3249.
>
> Harbin–Bey has not presented any authority to establish that prisoners are constitutionally entitled to a hearing prior to receiving a special designation. Because the state is not obligated to provide such a hearing, the fact that it offers one for some prison classifications but not for others is of no federal constitutional consequence so long as the choice is not an arbitrary one. *See Hadix v. Johnson*, 230 F.3d 840, 843 (6th Cir. 2000) ("[R]ational basis review is not a rubber stamp of all legislative action, as discrimination that can *only* be viewed as arbitrary and irrational *will* violate the Equal Protection Clause.") (emphasis in original). Threats to prison security presumably demand more immediate attention than the threats presented by the other categories mentioned by Harbin–Bey. The MDOC's differing treatment for the STG classification is therefore not arbitrary. *See Jones*, 433 U.S. at 136, 97 S. Ct. 2532.

*Harbin-Bey*, 420 F.3d at 576–77. For the reasons set forth by the Sixth Circuit in *Harbin-Bey*, Plaintiff's equal protection claim is properly dismissed for lack of merit.

### C. First Amendment

Finally, Plaintiff claims that the refusal to remove the STG member label violates his First Amendment association rights. The Court notes that prison inmates do not retain those First

11

Amendment rights that are "inconsistent with [their] status as [prisoners] or with the legitimate penological objectives of the corrections system." *Jones v. N. Carolina Prisoners' Lab. Union, Inc.*, 433 U.S. 119, 129–33 (1977) (*citing Pell v. Procunier*, 417 U.S. 817, 822 (1974)). Prisons obviously differ from free society in they are populated, involuntarily, by people who have been found to have violated one or more of the criminal laws established by society for its orderly governance. *Id.* The United States Supreme Court has repeatedly recognized the need to place major restrictions on the rights of prisoners in order to accommodate institutional needs and objectives and provisions of the Constitution that are of general application, including situations in which First Amendment rights are implicated. *Id.*

Freedom of association is among the rights least compatible with incarceration. *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003) (*citing Jones,* 433 U.S. at 125–126)). To determine whether prison regulations are reasonably related to a legitimate penological interest, the Court must assess the restriction by reference to the following factors: (1) whether there exists a valid, rational connection between the prison regulation and the legitimate governmental interest; (2) whether there remain alternative means of exercising the right; (3) the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether there are ready alternatives available that fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests. *Turner v. Safley*, 482 U.S. 78, 89–90 (1987).

Applying this standard, the Supreme Court has upheld a variety of limitations on First Amendment protections. *See Shaw*, 532 U.S. at 229 (holding that prisoners do not have a First Amendment right to provide legal assistance to other prisoners) (quoting *Pell v. Procunier*, 417 U.S. 817, 822 (1974)) (sustaining proscriptions on media interviews); *Thornburgh v. Abbott*, 490

U.S. 401, 419 (1989) (applying *Turner* standard to a prison ban on certain publications); *Turner*, 482 U.S. at 93 (restricting inmate-to-inmate correspondence); *see also North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. at 133 (upholding prohibition on prisoner labor unions).

As noted above, the Sixth Circuit has previously determined that the MDOC's policy directive regarding the classification of inmates as STG members is rationally related to the legitimate state interest of maintaining order in the prison. *Harbin-Bey*, 420 F.3d at 576. Plaintiff does not have a constitutionally protected right to associate with members of a security threat group without being labeled as a member of that group. Therefore, Plaintiff's First Amendment claim is properly dismissed.

### D. Other Claims

Plaintiff makes vague and conclusory references to other claims in the recitation of facts in his complaint:

#### 1. Free exercise

For example, Plaintiff alleges that Defendants Phillips and Schroederus spoke to him about going to prayer services, stating that it was a known place for STG members to meet up. (ECF No. 1, PageID.9.) However, Plaintiff does not allege that he was prevented from attending services or that his right to practice his religion was infringed on in any way. Therefore, any claim that Defendants violated his right to freely exercise his religious beliefs is properly dismissed. *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989); *see also Welch v. Spaulding*, 627 F. App'x 479, 485 (6th Cir. 2015) (McKeague, J., dissenting) ("To violate the First Amendment, the diet must impose a substantial burden on the inmate's exercise of religion.").

#### 2. Eighth Amendment

Plaintiff also contends that Defendants violated his Eighth Amendment rights by subjecting him to cruel and unusual punishment. (ECF No. 1, PageID.12–13.) In making this assertion,

13

Plaintiff states that Defendants' failure to remove him from STG status causes him emotional distress. The Eighth Amendment prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

Although it is clear that Plaintiff is denied certain privileges as a result of his label as an STG member, he does not allege or show that he is being denied basic human needs and requirements. The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008). Moreover, Plaintiff cannot bring an Eighth Amendment claim for emotional or mental damages because he does not allege a physical injury. *See* 42 U.S.C. §1997e(e); *see also Hudson*, 503 U.S. at 5; *Harden-Bey*, 524 F.3d at 795.

Plaintiff also states that he has been attacked by other inmates for attempting to renounce his STG group status (ECF No. 1, PageID.13). However, Plaintiff fails to allege facts showing that Defendants are in any way responsible for the attacks. Accordingly, for the reasons set forth above, Plaintiff fails to state an Eighth Amendment claim against Defendants.

### 3. Fifth Amendment

Plaintiff also makes a passing assertion that his Fifth Amendment rights have been violated (*Id.*), but fails to allege any specific facts in support of this claim. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Furthermore, the Fifth Amendment applies only to claims against federal employees. In this action, it appears that all Defendants are employees of the MDOC. Plaintiff, therefore, cannot maintain his Fifth Amendment claim against Defendants, and this claim will be dismissed. *See, e.g.*, *Scott v. Clay Cnty., Tenn.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000) (noting that "[t]he Fourteenth Amendment's Due Process Clause restricts the activities of the states and their instrumentalities; whereas the Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government").

### 4. Retaliation

Finally, Plaintiff vaguely contends that Defendants retaliated against him for sending and receiving letters and for exhausting his remedies (ECF No. 1, PageID.15), but he fails to allege any specific facts in support of this claim. In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, in least in part, by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged

15

retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (discussing that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))). Plaintiff merely alleges the ultimate fact of retaliation in this action. He has not presented any facts to support his conclusion that Defendants retaliated against him because he sent and received letters and filed grievances against unnamed persons. Accordingly, his speculative allegation fails to state a claim.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that

Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated: March 17, 2023

/s/ *Maarten Vermaat*
Maarten Vermaat
United States Magistrate Judge